A96A1355. JOHNSON v. THE STATE.
(477 SE2d 439)

ANDREWS, Judge.

Bobby Lee Johnson was found guilty by a jury of aggravated assault with a knife and possession of a knife during the commission of the aggravated assault. On appeal, he claims: (1) that the trial court erroneously instructed the jury to return a guilty verdict on the possession charge if they found him guilty of aggravated assault; (2) that the trial court erred by refusing to charge the jury on the defense of accident; (3) that he was denied due process of law by a delay in the preparation of the trial transcript during the appellate process; and (4) that the trial court should have ordered a retrial. Because instructing the jury to return a guilty verdict on the possession charge was error, the conviction for possession of a knife during the commission of the aggravated assault must be reversed. Finding no other error, the conviction for aggravated assault is affirmed under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The following evidence was produced at trial: The State presented testimony from the victim and two eyewitnesses that Johnson attacked and attempted to stab the victim with a knife in the lobby of the Richmond County courthouse. The victim testified that her hand was cut when she grabbed the blade of the knife to prevent Johnson from stabbing her. Johnson testified and admitted he pulled a knife on the victim and brought it up at her to scare her. But he testified that after doing so he decided not to hurt her and handed the knife to the victim. He testified that, although he intentionally pulled the knife and brandished it to scare the victim, he considered the whole incident to be an accident.

1. At the close of the evidence, the trial court instructed the jury that, if they found Johnson guilty of aggravated assault with a knife (Count 1), "you necessarily have to find him guilty of count 2 because that is whether or not he was in possession of a knife in the commission of a crime, and that's been admitted in the testimony in the case." This instruction was erroneous because it required the jury to find Johnson guilty of the possession charge if they found him guilty of aggravated assault and prevented the jury from independently considering whether or not Johnson was guilty of the possession charge. See *Bryant v. State*, 163 Ga. App. 872 (296 SE2d 168) (1982).

Apparently, the trial court concluded that, if the jury found Johnson guilty of aggravated assault with the knife, the evidence and law logically demanded that he also be found guilty of possession of the knife in the commission of the aggravated assault. However, under the Georgia Constitution, "the jury shall be the judges of the law and the facts" (Ga. Const. 1983, Art. I, Sec. I, Par. XI (a)), and the court cannot direct the jury to return a verdict of guilty in a criminal case no matter what the law or the evidence would require. Id. Although a jury has a duty to convict when the evidence proves guilt beyond a reasonable doubt, its duty is distinct from its power, and a jury has the power to acquit the defendant even if its verdict is contrary to the law and the evidence. *Cargill v. State*, 255 Ga. 616, 642 (340 SE2d 891) (1986); *Felker v. State*, 252 Ga. 351, 378-379 (314 SE2d 621) (1984). Accordingly, the judgment of conviction and sentence on the charge of possession of a knife during the commission of a crime must be reversed.

2. The trial court properly refused to give Johnson's requested charge on misfortune or accident based on OCGA § 16-2-2 because there was no evidence to support it. *Moore v. State*, 220 Ga. App. 434, 435 (469 SE2d 211) (1996). Johnson's testimony that he intentionally pulled the knife on the victim but considered the whole incident to be an "accident" was not even slight evidence that he acted accidentally, with "no criminal scheme or undertaking, intention, or criminal negligence." OCGA § 16-2-2.

3. Johnson has failed to demonstrate that delay in the preparation of a transcript of testimony during the appellate process denied him due process of law. Although there was an unexplained delay of over two years between the conviction and the filing of the requested trial transcript, Johnson's only claim of prejudice is that he was incarcerated during the delay. In the absence of any evidence that a delay in preparing the transcript prevented an appellant from presenting an adequate appeal or impaired a defense which would have otherwise been available where a new trial is ordered due to trial error, no prejudice has been shown amounting to a denial of due process. *Graham v. State*, 171 Ga. App. 242, 250-251 (319 SE2d 484)

(1984). "[W]e refuse to hold that post-conviction incarceration, in and of itself, is a violation of due process of law." Id. at 251.

4. Because Johnson's fourth enumeration of error was not supported in his appellate brief by citation of authority or argument, it is deemed abandoned. Court of Appeals Rule 27 (c) (2).

*Judgment affirmed in part and reversed in part. Smith, J., concurs. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

I agree that the conviction for possession of a weapon during the commission of a crime must be reversed. No matter how one-sided the evidence is against a criminal defendant, the court cannot direct a verdict of guilty, which is essentially what it did here.

I cannot agree with the majority's decision in Division 3, however, as I do not think this due process issue can or should be decided in the context of this appeal. Because defendant may be retried on the weapons offense, there is at least a possibility — a possibility not present in *Graham v. State*, 171 Ga. App. 242, 249 (7) (319 SE2d 484) (1984) — that defendant may have been prejudiced by the two-year delay in his appeal. And it is unrealistic and impractical to expect a defendant to show prejudice from a delay in the appeal in the course of that appeal itself, since no one will be able to evaluate the prejudice until they know the outcome of the appeal. For this reason, I believe the question of whether a delay in the appellate process violated the defendant's due process rights should not be raised or addressed as an issue in the course of the allegedly delayed appeal, but should instead be raised in the lower court before any retrial.

In *Graham*, we agreed with other jurisdictions that "a defendant may be denied due process of law where there is an inordinate delay in the appellate process, including an excessive delay in the furnishing of a trial transcript necessary for completion of an appellate record." 171 Ga. App. at 250. We adopted an analytical approach similar to that utilized in cases involving speedy trial violations: whether a delay in the appellate process violates due process depends on (1) the length of the delay, (2) the cause of the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. In *Graham*, the delay was a year, the trial was very lengthy, the court reporter had relocated to another state, and the defendant acknowledged he had not called the delay to the attention of the trial court. Moreover, as none of the defendant's other enumerations of error were meritorious, there was no question of retrial. Under these circumstances, we could conclude there was no prejudice and no violation of due process as a matter of law. Id. at 251.

Here, we know that the delay was an unacceptably excessive two

years.[1] The cause of the delay is not reflected in the record, though it is obvious that the trial was neither lengthy nor complex. And it appears from the briefs (though it cannot be ascertained from the record) that defendant repeatedly brought the delay to the trial court's attention and asked it to expedite the process. Like prejudice, these factors can best be explored in the context of an evidentiary hearing below.

In *Graham* and *Proffitt v. State*, 181 Ga. App. 564, 566 (3) (353 SE2d 61) (1987), the defendants' convictions were fully affirmed, so we could conclude that there was no prejudice and no violation of due process as a matter of law. But where, as here, the defendant's conviction is partially or fully reversed and the defendant may be retried, we should refrain from deciding the due process issue and allow the trial court to address it first. If the trial court finds a due process violation, retrial of defendant on the weapons charge should be precluded; if it does not, retrial can proceed. And if the State chooses not to retry defendant, there will have been no prejudice and thus no violation of due process. See *Proffitt*, 181 Ga. App. at 566-567; *Graham*, 171 Ga. App. at 250.

DECIDED OCTOBER 23, 1996 — 

*Lawrence D. Galehouse*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[1] Under OCGA § 5-6-43 (c), this Court has the duty to expedite disposition of criminal cases where the defendant is confined in jail. And to the extent they do not already do so, trial courts giving their court reporters directions should prioritize transcripts in such cases accordingly.

The defendant/appellant has the responsibility to call the delay to the attention of the trial court, as is reflected in the third factor in the analysis set forth in *Graham*; but only the trial court has the power to ensure the court reporter completes the transcript.